IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

RICHARD VINT,                                  )     CASE NO.  5:23-CV-00208-DAR
                                               )
              Plaintiff,                       )
                                               )
                                               )     JUDGE DAVID A. RUIZ
       vs.                                     )     UNITED STATES DISTRICT JUDGE
                                               )
COMMISSIONER OF SOCIAL                         )     MAGISTRATE JUDGE
SECURITY,                                      )     JONATHAN D. GREENBERG
                                               )
              Defendant.                       )     **REPORT AND RECOMMENDATION**
                                               )
                                               )

       Plaintiff, Richard Vint ("Plaintiff" or "Vint"), challenges the final decision of Defendant, Kilolo

Kijakazi,[1] Acting Commissioner of Social Security ("Commissioner"), denying his applications for a

Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income

("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United

States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and

Recommendation.   For the reasons set forth below, the Magistrate Judge recommends that the

Commissioner's final decision be AFFIRMED.

## I.   PROCEDURAL HISTORY

       In September 2020, Vint filed an application for POD, DIB, and SSI, alleging a disability onset

date of December 23, 2019, and claiming he was disabled due to lost left ring finger, cartilage in back

pulled away, severely damaged left shoulder, sore legs with numbness and tingling, suicidal ideation,

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security.

1

herniated discs, arthritis, emphysema, depression, bipolar disorder, left shoulder pain, right knee pain, and right ankle pain. (Transcript ("Tr.") 15, 87.) The applications were denied initially and upon reconsideration, and Vint requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 15.)

On November 3, 2021, an ALJ held a hearing, during which Vint, represented by counsel, and an impartial vocational expert ("VE") testified. (*Id.*) On January 4, 2022, the ALJ issued a written decision finding Vint was not disabled. (*Id.* at 15-26.) The ALJ's decision became final on December 5, 2022, when the Appeals Council declined further review. (*Id.* at 1-6.)

On February 3, 2023, Vint filed his Complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 7, 11-12.) Vint asserts the following assignments of error:

> (1)  The ALJ found at Step Four of the Sequential Evaluation that Plaintiff could return to his past relevant work as a molding press operator. This finding lacks substantial evidence as the ALJ failed to properly evaluate Plaintiff's symptoms in accordance with Social Security Ruling 16-3p.
>
> (2)  The ALJ found at Steps Four and Five of the Sequential Evaluation that Plaintiff could return to his past relevant work as a molding press operator or other jobs which exist in the national economy. This finding was in error and not supported by substantial evidence.

(Doc. No. 7.)

## II.   EVIDENCE

### A.   Personal and Vocational Evidence

Vint was born in March 1972 and was 49 years-old at the time of his administrative hearing (Tr. 15, 25), making him a "younger" person under Social Security regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). He has at least a high school education. (Tr. 25.) He has past relevant work as a tree cutter and molding press operator. (*Id.*)

**B.      Medical Evidence[2]**

On November 3, 2020, while hospitalized, treatment providers evaluated Vint for back and right leg pain with the inability to ambulate. (*Id.* at 459.) His toxicology screen was positive for cocaine and THC. (*Id.*) Treatment providers noted oral steroids and a right L3-4 epidural steroid injection did not help his symptoms. (*Id.*) Vint underwent a right L3-4 microdiscectomy with improvement in his symptoms. (*Id.*) Treatment providers noted Vint was able to walk by discharge on November 12, 2020. (*Id.*)

On November 24, 2020, Vint saw surgeon Daria Krivosheya, M.D., for his first post-operative visit. (*Id.* at 458-59.) Vint reported he felt the surgery had been helpful and that he was taking four cyclobenzaprine at a time. (*Id.* at 459.) While he occasionally experienced numbness and tingling in his left leg, Vint told Dr. Krivosheya that had been going on for a long time. (*Id.*) Vint endorsed right hip pain and back soreness, which oxycodone did not help. (*Id.*) Vint described his lower back pain as aching and ongoing for many years. (*Id.*) He rated his back pain as a 6/10 that day and reported it was worse in the morning. (*Id.*) On examination, Dr. Krivosheya found normal muscle tone, normal strength except for "some slight 4/5 weakness in right DF 2ry to prior ankle injury," decreased sensation in right L5 dermatome, normal gait, normal heel walking, normal tandem gait, absent Romberg sign, ability to rise from chair without using arms, and slow toe walking. (*Id.* at 460.) Dr. Krivosheya noted Vint was "[d]oing well," his pain had improved, and "HF is strong 5/5." (*Id.*) The incision was healing well. (*Id.*) Dr. Krivosheya directed Vint to start physical therapy and follow up in six weeks. (*Id.*)

On November 30, 2020, Vint saw Ann Plas, PT, for his first physical therapy appointment. (*Id.* at 781.) Plas noted Vint presented with "impairments of increased hip and back pain, decreased BLE strength,

---

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs. As Vint challenges only the ALJ's physical findings, the Court further limits its discussion of the medical evidence to Vint's physical impairments.

lumbar and hip flexibility and AROM and difficulty with functional activities." (*Id.* at 782.)  Plas noted Vint was using an assistive device and reported a fall with injury in the past year.  (*Id.* at 783.)  That day, Vint rated his hip pain as a 7/10 and described it as aching, sore, and continuous.  (*Id.*)  On examination, Plas noted a modified independent gate with use of a cane, decreased foot clearance, and decreased heel strike during initial stance.  (*Id.* at 784.)

On December 23, 2020, Vint saw Katherine Guran, M.D., for a pain management evaluation of his low back and right hip pain.  (*Id.* at 1285, 1288.)  Vint rated his pain as a 7/10 that day and described it as tender, achy, and spasms.  (*Id.* at 1285.)  He denied numbness and tingling but endorsed pain that radiated into his right hip and posterior knee, and occasionally had pain and numbness of the left toes.  (*Id.*)  Vint reported going to two physical therapy sessions before he was discontinued for no shows and that he had tried an epidural steroid injection.  (*Id.*)  Sitting and prolonged standing aggravated his pain, while walking alleviated it.  (*Id.*)  Dr. Guran noted Vint was "[u]sing excessive flexeril amounts and ibuprofen without relief."  (*Id.*)  Vint admitted to daily THC use.  (*Id.*)  On examination, Dr. Guran found stability and full range of motion of the hips bilaterally, although there was pain with right hip flexion and internal rotation, full hip strength, pain with resisted abduction on the right, positive log roll on the right, tenderness to paplpation along the greater trochanteric bursa on the right, normal flexibility of the piriformis and psoas muscles, intact neurovascular evaluation, no bony tenderness along the lumbar or sacroiliac joints, no paraspinal muscle tenderness, full range of motion of the back, intact sensation, and negative straight leg raise and femoral stretch tests.  (*Id.* at 1287-88.)  Dr. Guran prescribed diclofenac topical gel and amitriptyline.  (*Id.* at 1288.)

On December 30, 2020, Vint attended an examination at United Accident & Injury regarding his work injury on September 15, 2020.  (*Id.* at 1107.)  Vint was working as a ground man for a tree company and was holding a rope attached to a tree branch that was being cut by another employee.  (*Id.*)  As the

4

tree branch fell to the ground, the rope attached to the branch yanked on Vint's back and caused immediate pain in his low back.  (*Id.*)  Vint underwent lumbar spine surgery on November 21, 2020, and post-operative physical therapy, but twisting exercises aggravated the pain.  (*Id.*)  Vint's requested diagnoses consisted of L4 herniated disc, L5 herniated disc, and lumbago.  (*Id.*)  Vint complained that his right hip gave out and he felt like falling, he had sore low back pain, he could not sit or stand too long, his low back hurt with difficulty dressing, and his left shoulder felt tender.  (*Id.*)  On examination, the examiner found reduced range of motion of the left shoulder and positive Apley's, supraspinatus test, drop arm test, and Hawkin's test, as well as reduced muscle strength of the left shoulder.  (*Id.* at 1107-08.)  The examining physician also found reduced range of motion of the lumbar spine and positive toe/heel test, positive straight leg raise test bilaterally, positive Braggard's, Milgram's, Nachla's, Ely's, Yeoman's, and Patrick-Fabere tests, a normal sensory exam, and weak left radial and median nerve muscle testing using the left thumb compared to the right thumb.  (*Id.* at 1108.)  The examining physician wrote: "His symptoms are affecting his daily ADL's.  The goal is to diminish his pain, discomfort, and return him to a point where he will have greater ease with performance of his normal ADL's.  At the conclusion of this treatment plan, he will be re-evaluated, and further treatment decisions will be made at that time.  I will keep you informed of any changes in his subjective complaint, objective findings or if he experiences a flare-up of the condition in any way."  (*Id.* at 1109.)

On January 11, 2021, Vint saw Dr. Krivosheya for follow up.  (*Id.* at 1219.)  Dr. Kriovsheya noted that at his second post-operative visit a week earlier, Vint reported his right leg symptoms had improved overall, he had pain in his left leg, and he had only attended one physical therapy session as he had transportation issues for his return visits.  (*Id.*)  Vint told Dr. Kriovsheya he continued to have left leg symptoms and he was having more bad days than good.  (*Id.*)  On examination, Dr. Krivosheya found no edema, normal muscle bulk and tone, 4+/5 dorsiflexion in the right, which was stable, intact sensation,

normal casual gait, normal tandem gait, absent Romberg sign, ability to rise from a chair without using arms, slow toe walking, and unsteady heel walking.  (*Id.* at 1221.)  Dr. Krivosheya noted a January 6, 2021 x-ray of the lumbar spine revealed L5-S1 sub-centimeter grade 1 bilateral spondylitic spondylolisthesis.  (*Id.*)  Dr. Krivosheya noted Vint was "[d]oing well with significant improvement on the right with resolution of leg pain," he had left-sided back pain, and he was using a cane.  (*Id.*)  Dr. Krivosheya released Vint from his restrictions, and noted Vint had an FCE scheduled so he could return to work and would continue to work with PT.  (*Id.*)

An MRI of the lumbar spine taken on January 12, 2021 revealed improvement in disc herniation at the L45 level and degenerative changes with foraminal stenosis at L4-5 that was worse on the right.  (*Id.* at 1221-22.)

On January 27, 2021, Vint saw Dr. Guran for follow up of his low back and right hip pain.  (*Id.* at 1117.)  Vint rated his pain as a 7/10 and described the pain as tender, achy, and spasms.  (*Id.*)  Vint told Dr. Guran that his pain was not constant now.  (*Id.*)  Vint told Dr. Guran the pain radiated into his right hip, but it was rare that it radiated to his posterior knee.  (*Id.*)  Vint denied numbness and tingling.  (*Id.*)  Sitting and prolonged standing aggravated his pain, while walking alleviated it.  (*Id.*)  He told Dr. Guran that amitriptyline and Voltaren gel provided moderate relief, and that he had been doing outside PT strengthening with some improvement.  (*Id.*)  His surgeon wanted him to restart physical therapy, and he was awaiting an FCE so he could return to work.  (*Id.*)  On examination, Dr. Guran found normal gait, stable hips with full flexion, extension, and internal and external rotation bilaterally, mild bony tenderness along the lumbar vertebrae, no tenderness along the sacroiliac joints, mild paraspinal muscle tenderness, full range of motion of the back, full strength of the lower extremities bilaterally, intact sensation, negative straight leg raise and femoral stretch tests, and no edema of the extremities.  (*Id.* at 1119.)

On February 9, 2021, Vint saw Dr. Krivosheya for his three-month post-operative visit.  (*Id.* at

1215-16.)  Vint reported surgery helped his right lower extremity; while he still had pain, it was not as bad as it was before surgery.  (*Id.* at 1216.)  He complained of left gluteal pain when getting up in the morning and from sitting.  (*Id.*)  Vint reported he had an FCE scheduled for March 17, 2021, and he continued to see pain management.  (*Id.*)  On examination, Dr. Krivosheya found no deformity or edema, normal muscle bulk and tone, 4-/5 dorsiflexion in the right, decreased sensation in the right ankle/foot, absent ankle clonus bilaterally, normal casual gait, normal tandem gait, absent Romberg's sign, ability to rise from chair without arms, and toe and heel walking antalgic towards the right.  (*Id.* at 1217-18.)  Dr. Krivosheya noted, "Symptoms on the right improved post surgery.  Has more symptoms on the left.  States it alternates between sides.  Not using cane today."  (*Id.* at 1218.)  Dr. Krivosheya encouraged Vint to continue working with pain management and did not recommend surgery at that time.  (*Id.*)

On February 15, 2021, Vint saw Dr. Guran for follow up and reported experiencing only back pain at that time.  (*Id.* at 1292.)  Vint denied numbness, tingling, and radiating to the legs.  (*Id.*)  Sitting and prolonged standing aggravated his pain.  (*Id.*)  Vint reported using amitriptyline and Voltaren gel with moderate relief and he had seen some improvement doing PT strengthening exercises.  (*Id.*)  He told Dr. Guran his surgeon did not recommend further surgery.  (*Id.*)  On examination, Dr. Guran found normal gait, stability of the hips bilaterally, full flexion, extension, and internal and external rotation of the hip bilaterally, full strength of the hips bilaterally, minimal tenderness to palpation along the greater trochanteric bursa, no tenderness to palpation over the ASIS or AIIS, no tenderness to palpation over the anterior aspect of the hip, bony tenderness along the lumbar vertebrae, no tenderness along the sacroiliac joints, mild paraspinal muscle tenderness, full range of motion of the back, pain with back extension and facet loading, full strength in the lower extremities bilaterally, intact sensation of the lower extremities bilaterally, and negative straight leg raise and femoral stretch tests.  (*Id.* at 1294.)  Dr. Guran noted Vint was "much improved" post lumbar microdiscectomy.  (*Id.* at 1295.)

On February 27, 2021, Vint underwent a consultative physical examination with Jenna Borys, D.O. (*Id.* at 1304-06.) Vint reported living on his own and completing his ADLs without assistance. (*Id.* at 1304.) He lived in a home with no stairs and did not drive. (*Id.*) Vint reported no problems going up and down stairs, although he did so slowly. (*Id.*) He told Dr. Borys he used a cane as needed but did not have one with him that day. (*Id.*) Vint was more comfortable in the standing position. (*Id.*) He reported that after 10 minutes it became difficult for him to stand up frequently, and he would get sore and need to stretch out. (*Id.*) How much he could stand depended on his level of physical activity and pain; he could stand anywhere from 30 minutes to an hour. (*Id.*) Vint reported being able to walk a city block and told Dr. Borys walking everywhere was one of his primary activities. (*Id.*) It was difficult for him to bend forward and lift; even five pounds was too much. (*Id.*) Vint reported he was no longer taking medication for his pain and was scheduled to go back to physical therapy in March. (*Id.*) He described his pain as centered in his low back with minimal radiation to his bilateral lower extremities. (*Id.*) Vint also endorsed intermittent left hand paresthesias after his finger was amputated. (*Id.* at 1305.)

On examination, Dr. Borys found forward flexion to 60 degrees but noted Vint could not touch his toes. (*Id.*) Vint reported using a grabbing device at home if he had to pick something up. (*Id.*) He could get on and off the exam table. (*Id.*) Dr. Borys further found normal gait, normal station, normal pace, the ability to complete heel to toe walk, normal fine motor skills, no spinal tenderness to palpation, normal range of motion of the upper extremities bilaterally, and no lower extremity edema. (*Id.* at 1305-06.) Dr. Borys opined:

> Based on his physical exam and symptomology I do believe that he will still require moderate restrictions. I believe he would best be served doing sedentary work where he had the ability to sit or stand as needed. Prolonged periods of standing and/or sitting are difficult for him. He is also going to be limited in mobility and should not be in a position where quick movement is required. He will also be limited in bending or flexing forward at his spine. I would recommend lifting restrictions of less than 5-10 pounds until cleared by his neurosurgeon.

8

(*Id.* at 1306.)

Michael C. Lahm, M.D., reviewed x-rays of the left shoulder taken that same day and found mild acromioclavicular osteoarthritis.  (*Id.* at 1303.)

On March 15, 2021, Vint underwent a medial branch block at L4/5 and L5/S1 bilaterally.  (*Id.* at 1399-1401.)

On May 14, 2021, Vint went to the emergency room with complaints of left back pain radiating down his left leg.  (*Id.* at 1394.)  Treatment providers noted Vint was ambulatory in triage.  (*Id.*)  On examination, treatment providers found tenderness to left paraspinal lumbar tenderness, mild midline tenderness, normal range of motion, full lower extremity strength bilaterally, intact sensation, negative straight leg raises, and normal x-rays. (*Id.* at 1396.)  Treatment providers prescribed Flexeril and Vint was discharged home in good condition.  (*Id.*)

## C.     State Agency Reports

On March 12, 2021, Lynne Torello, M.D., reviewed the file and opined Vint could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, and his ability to push and/or pull with the upper and lower extremities was unlimited, other than shown for lift and/or carry.  (*Id.* at 95-96, 108-09.)  He could stand and/or walk for a total of about six hours in an eight-hour workday and sit for a total of about six hours in an eight-hour workday.  (*Id.* at 95, 108.)  He could occasionally climb ramps, stairs, ladders, ropes, and scaffolds.  (*Id.*)  He could frequently balance.  (*Id.*)  He could occasionally stoop and crawl, and his ability to kneel and crouch was unlimited.  (*Id.*)

On July 13, 2021, on reconsideration, Mehr Siddiqui, M.D., affirmed Dr. Torello's findings.  (*Id.* at 120-21, 132-33.)

## D.     Hearing Testimony

During the November 3, 2021 hearing, Vint testified to the following:

- He lives alone. (*Id.* at 43.) He does not drive; he either walks or takes the bus. (*Id.* at 44.) He can walk to the gas station and the grocery store, which are about a block away each way. (*Id.*) He rides the bus twice a week. (*Id.*) He takes care of his daily activities on his own. (*Id.*)

- He cannot work because he has severe pain in his lower back and he has arthritis in his hips, which makes it hard for him to stand up or bend over to pick something up and stand straight back up. (*Id.* at 51.) He uses lidocaine patches or Advil for his pain. (*Id.*) He had surgery on his back. (*Id.* at 52.) It helped a little bit, but not like he expected it to. (*Id.*) He did four weeks of physical therapy after his surgery. (*Id.*) Physical therapy just caused pain. (*Id.*) He received injections because his doctors did not want him to undergo another surgery since he smokes. (*Id.*) His left shoulder still bothers him. (*Id.* at 54.) It clicks constantly and he gets a sudden pain down through his elbow if he tries to stretch or raise his arm. (*Id.* at 55.) He is right-handed. (*Id.*) His medications help if he takes them at bedtime when he is not feeling a lot of pain; when he is up and awake, he has pain all day long. (*Id.* at 59.) His left knee hurts a lot, which he thought was because he had fallen on it many times. (*Id.*) His right ankle also hurts. (*Id.*) He just had x-rays done of his knee and ankle, but he has not received any treatment yet. (*Id.*)

- He can stand for half an hour before he needs to sit down. (*Id.* at 52.) He can walk a couple of blocks before needing to take a break. (*Id.* at 52-53.) He can lift a full gallon of milk with his left hand. (*Id.* at 55.) He could not easily grab a box of cereal from the top shelf. (*Id.*) He uses his right hand or right arm to wash his hair or put his hand over his head to put on a t-shirt. (*Id.* at 55-56.) He takes naps during the day. (*Id.* at 57.) He can sit for 20 minutes before he needs to get up and walk around. (*Id.* at 61.)

- He uses a cane daily outside his home. (*Id.* at 53.) Even though his back surgery was successful, if he walks too fast, his right leg "will kind of like skip or drag on the ground," which is why he needs a cane to keep him from falling. (*Id.*) He falls quite often and has a serious bruise on his left leg from where he keeps landing on it. (*Id.*) He has had to go the emergency room because of his falls. (*Id.* at 53-54.) He holds his cane in his right hand. (*Id.* at 55.) He uses his cane for balance. (*Id.* at 60.) He needs to use the cane even when he is standing as opposed to walking. (*Id.*) He does not use the cane inside his apartment because he leans on other things in his apartment. (*Id.* at 61.) After sitting for 20 minutes, he stands up or takes a hot shower. (*Id.* at 62.) He needs to walk around after standing up. (*Id.*) It takes him 5-10 minutes to walk a block because he walks slowly and takes breaks along the way. (*Id.*) He sits on the church steps on the way to the gas station or the grocery store. (*Id.*) He can walk three to four minutes before he has to stop. (*Id.* at 63.)

- He could not make his functional capacity exam because the exam was in Canton, and he did not have any money to get there. (*Id.* at 54.)

- On a typical day, he leaves his apartment and walks a couple of blocks to the library to use the Internet. (*Id.* at 57.) He does not do a lot besides walk. (*Id.*)

- He has not drunk alcohol for over a year.  (*Id.* at 58.)  He last used marijuana six months ago.  (*Id.*)

The VE testified Vint had past work as a tree cutter, hand packager, molding press operator plastics, and forklift operator.  (*Id.* at 66.)  The ALJ then posed the following hypothetical question:

> I do have a number of hypothetical questions for you today.  With any hypothetical question, I do want you to assume somebody of Mr. Vint's age, his education, as well as that job history you just described.  Now, the first hypothetical individual would be at the light exertion range and we would've the following limitations.  Individual could never climb ladders, ropes or scaffolds, occasionally climb ramps and stairs as well as stoop, kneel, crouch and crawl.  Now, this individual could frequently balance.  He could occasionally reach overhead, but frequently reach in all other directions as well as frequently handle with the left upper extremity.  Now, he would need to avoid concentrate [sic] exposure to extreme cold and vibrations and avoid all exposure to hazards.  And those would include protected [sic] heights, moving mechanical parts and commercial driving.  Now, this individual would be limited to performing simple routine, repetitive tasks and would not be able to perform tasks which required a high production rate pace such as assembly line work.  He could make only simple work-related decisions and should not be responsible for the safety or welfare of others.  Now, he could interact on an occasional basis with supervisors and coworkers, but have no more than incidental interaction with the general public.  Now, he should also be limited to superficial contact and by that I mean no sales, arbitration, negotiation, conflict resolution or confrontation.  No group tandem or collaborative tasks, as well as no management direction or persuasion of others.  Now, this individual could respond appropriately to occasional change in a routine work setting but those changes would need to be easily explained and/or demonstrate it in advance of gradual implementation.  Would that first hypothetical individual be able to perform any of the claimant's past work?

(*Id.* at 66-68.)

The VE testified the hypothetical individual would be able to perform Vint's past work as a molding press operator of plastics.  (*Id.* at 68.)  The VE further testified the hypothetical individual would also be able to perform other representative jobs in the economy, such as office cleaner, mail clerk, and assembler of small products.  (*Id.* at 69.)

The ALJ modified the hypothetical to reduce the exertional level to sedentary.  (*Id.* at 70.)  The VE testified the hypothetical individual would not be able to perform any of Vint's past work on strength

11

capacity alone.  (*Id.*)  The VE further testified the hypothetical individual would be able to perform other representative jobs in the economy, such as document preparer, addresser, and table worker.  (*Id.* at 70-71.)

The ALJ asked the VE what impact it would have on the sedentary jobs if the ALJ included a limitation of use of a cane when ambulating.  (*Id.* at 71.)  The VE testified such a limitation would not affect any of those jobs unless the cane was required while standing as well.  (*Id.*)  In response to further questioning from the ALJ, the VE testified that the requirement of a cane for balance while standing would eliminate the identified jobs.  (*Id.*)

### III.    STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a).

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

A disabled claimant may also be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100, 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant

12

must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c), 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g).

Here, Vint was insured on his/her alleged disability onset date, December 23, 2019, and remains insured through September 30, 2020, his date last insured ("DLI").  (Tr. 15.) Therefore, in order to be entitled to POD and DIB, Vint must establish a continuous twelve-month period of disability commencing between these dates.  Any discontinuity in the twelve-month period precludes an entitlement to benefits. *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

## IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2020.

2.  The claimant has not engaged in substantial gainful activity since December 23, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, with spondylosis, status-post microdiscectomy, with herniated discs; osteoarthritis of the left shoulder; trochanteric bursitis of the right hip; depressive disorder; mood disorder; anxiety disorder; unspecified disruptive, impulse-control, and conduct disorder; borderline intellectual functioning; unspecified trauma and stressor-related disorder; and alcohol/cannabis use disorders (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, stoop, kneel, crouch, crawl, frequently balance; occasionally reach overhead with his left upper extremity; frequently reach in all other directions, handle with his left upper extremity; and he must avoid concentrated exposure to extreme cold and vibrations, and avoid all exposure to hazards such as unprotected heights, moving mechanical parts, or commercial driving. He can perform simple, routine and repetitive tasks, but not at a high production-rate pace, such as assembly line work; he can make only simple work-related decisions, and should not be responsible for the safety or welfare of others; he can interact with coworkers and supervisors occasionally, but should have no more than incidental contact with the general public, and any contact with others should be "superficial" in nature, meaning no sales, arbitration, negotiation, conflict-resolution or confrontation, no group, tandem or collaborative tasks, and no management, direction or persuasion of others; and he can respond appropriately to occasional change in a routine work setting, as long as any such changes are easily explained and/or demonstrated in advance of gradual implementation.

6.    The claimant is capable of performing past relevant work as a molding press operator, plastics (DOT# 556.685-022, light, SVP 2). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.    The claimant has not been under a disability, as defined in the Social Security Act, from December 23, 2019, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 17-26.)

14

## V.  STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS

### A. First Assignment of Error: Subjective Symptom Analysis

In his first assignment of error, Vint argues that the ALJ's finding that he could return to his past relevant work as a molding press operator lacks the support of substantial evidence, as the ALJ "failed to properly evaluate [his] symptoms in accordance with Social Security Ruling 16-3p." (Doc. No. 7 at 10.) After reciting evidence Vint asserts is supportive of disability, Vint argues that "[i]t is clear that the evidence in this matter established that Plaintiff satisfied the criteria set forth in Ruling 16-3p." (*Id.* at 15.)

16

Vint maintains the ALJ "failed to articulate any supportable rationale" for finding Vint's statements and the evidence set forth in Vint's brief "were not supportive of the fact that he would be precluded from engaging in substantial gainful activity on a full-time and sustained basis." (*Id.* at 15-16.)  Vint accuses the ALJ of engaging in an insufficient analysis, failing to comply with the requirements of SSR 16-3p, failing to articulate specific reasons for the credibility findings, and failing to make clear the weight the ALJ gave to Vint's testimony and the remainder of the evidence in this case. (*Id.* at 16.)

The Commissioner argues that Vint's arguments in his first assignment of error "consist of her [sic] recitation of the medical evidence (Pl. Br. 11-14) and some nonspecific conclusory statements averring that the ALJ's findings were not supported by substantial evidence (Pl. Br. 15-16)." (Doc. No. 11 at 11.)  The Commissioner maintains that, based on recent decisions from this Court, Vint's arguments are inappropriate, in addition to being undeveloped and perfunctory, and therefore forfeited. (*Id.*) (citing *Helwagen v. Comm'r of Soc. Sec.*, Case No. 5:22-CV-01467, 2023 WL 3727253, at *16 (N.D. Ohio Apr. 20, 2023); *Wahlert v. Comm'r of Soc. Sec.*, Case No. 5:22-cv-01324-SL, 2023 WL 4079203, at **14, 18 (N.D. Ohio May 15, 2023)).

When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating these symptoms. *See e.g., Massey v. Comm'r of Soc. Sec.*, 409 F. App'x 917, 921 (6th Cir. 2011).  First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce a claimant's symptoms.  Second, the ALJ "must evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). *See also* SSR 16-3p,[3] 2016 WL 1119029 (March 16, 2016).

---

[3] SSR 16-3p superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996) on March 28, 2016.  Thus, SSR 16-3 was in effect at the time of the November 3, 2021 hearing.

If these claims are not substantiated by the medical record, the ALJ must make a credibility[4] determination of the individual's statements based on the entire case record. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, the ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms ... and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2016 WL 1119029; *see also Felisky*, 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so").

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2016 WL 1119029 (March 16, 2016). Beyond medical evidence, there are seven factors that the ALJ should consider.[5] The ALJ need not analyze all seven factors but should show that he considered the

---

[4] SSR 16-3p has removed the term "credibility" from the analysis. Rather, SSR 16-3p directs the ALJ to consider a claimant's "statements about the intensity, persistence, and limiting effects of the symptoms," and "evaluate whether the statements are consistent with objective medical evidence and other evidence." SSR 16-3p, 2016 WL 1119029, at *6. The Sixth Circuit has characterized SSR 16-3p as merely eliminating "the use of the word 'credibility' ... to 'clarify that subjective symptom evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016).

[5] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and

relevant evidence.  *See Cross*, 373 F. Supp. 2d at 733; *Masch v. Barnhart*, 406 F. Supp. 2d 1038, 1046 (E.D. Wis. 2005).

Here, the ALJ acknowledged Vint's testimony and other statements regarding his symptoms and limitations.  (Tr. 21.)  The ALJ determined Vint's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  (*Id.*)  However, the ALJ found his statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with medical evidence and other evidence in the record for the reasons set forth in the decision.  (*Id.*)  Specifically, the ALJ found as follows:

> Overall, there is adequate objective medical evidence to support that the claimant has significant physical limitations, but not that he is prevented from the performance of all work activity.  When taken in combination, his records support that he remains capable of light exertion lifting, carrying, walking, and standing tasks, but that he should never climb ladders, ropes, or scaffolds, due to his left shoulder impairment, and hip bursitis, as well as lumbar pain.  Consistent with his testimony, the claimant remains able to occasionally climb ramps or stairs, kneel, crouch, or crawl.  In consideration of his left shoulder impairment, he is limited to frequent overhead reaching and frequent reaching in all other directions, as well as frequent handling with his left upper extremity.  In consideration of his testimony related to use of a cane, although there is no documented prescription for a cane, the claimant is limited to frequently balancing.  He must avoid concentrated exposure to extreme temperatures or vibrations because of radicular pain, and he must avoid all exposure to unprotected heights, moving mechanical parts, or commercial driving.

(*Id.* at 22.)

In rejecting the opinion of consulting examiner Dr. Jenna Borys, the ALJ found as follows:

> In turning to his physical health, the claimant participated in a consultative physical examination in February 2021 with Dr. Jenna Borys, DO.  (Ex. 13F)  The claimant was able to get onto and off of the examination table, demonstrated a normal gait and station, and was able to heel/toe walk.  (Ex. 13F/3)  Her opinion was that, "based on his physical exam and

restrictions due to pain or other symptoms.  *See* SSR 16-3p, 2016 WL 1119029, at *7; *see also Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 732–733 (N.D. Ohio 2005) (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.")

symptomatology I do believe that he will still require moderate restrictions. I believe he would best be served doing sedentary work where he had the ability to sit or stand as needed. Prolonged periods of standing and/or sitting are difficult for him. He is also going to be limited in mobility and should not be in a position where quick movement is required. He will also be limited in bending or flexing forward at his spine. I would recommend lifting restrictions of less than 5-10 pounds until cleared by his neurosurgeon." (Ex. 13F/4) This opinion is overall not persuasive. Despite the fact that Dr. Borys is an acceptable medical source, her opinion is inconsistent with her exam notes that the claimant has normal gait and reflexes, a negative straight-leg raising test, and normal range of motion, with the exception of decreased flexion of his lumbar spine. (Ex. 13F) Her opinion is consistent with the claimant's postsurgical limitations, but those restrictions appear to have been lifted when the claimant sought to return to work in February 2021, and certainly by the time he actually returned to work in May 2021. (Ex. 10F/1-2; 17F/5)[.]

(*Id.* at 24.)

Elsewhere in the decision, the ALJ noted:

- Improvement of lumbar and right leg pain with treatment.

- Activity restrictions were lifted in February 2021.

- Lack of treatment notes.

- Intact stability and strength of the right hip.

(*Id.* at 21-22.)

The undersigned finds substantial evidence supports the ALJ's assessment of Vint's subjective complaints. The record evidence, as noted by the ALJ, is not entirely consistent with Vint's allegations of disabling conditions. (*Id.* at 21-24.) Contrary to Vint's allegations, the ALJ credited some of his subjective symptoms but did not accept them to the extent alleged by Vint because of findings on examinations and his own statements, factors to be considered under the regulations. (*Id.*) Furthermore, the ALJ's extensive discussion of the relevant medical evidence included several findings that undercut a finding of disability. (*Id.*) The undersigned finds it is able to trace the path of the ALJ's reasoning regarding the subjective symptom evaluation in the decision. As this Court has previously stated, "the

20

ALJ does not need to provide a comprehensive response to a claimant's complaints but must relate the evidence to her conclusions in a way that is sufficiently clear to permit meaningful review . . . When read with common sense, the ALJ's decision satisfied this obligation." *Helwagen*, 2023 WL 3727253, at *15 (citations omitted).

There is no error.

## B.    Second Assignment of Error: Cane Usage

In his second assignment of error, Vint argues that the record showed he needed a cane to ambulate, preventing him from performing work at the light level of exertion.  (Doc. No. 7 at 18.)  In addition, since Vint also needed a cane while standing, he was unable to perform work at the sedentary level of exertion.  (*Id.*)  Vint alludes to the fact that he satisfies the criteria of SSR 96-9p, since he was prescribed a cane for improved stability with ambulation.  (*Id.* at 19.)  Therefore, Vint argues, remand is required.  (*Id.* at 18.)

The Commissioner responds that Vint's arguments are meritless for four reasons.  (Doc. No. 11 at 10.)  First, the ALJ found persuasive the opinions of the state agency reviewing physicians, who concluded that a cane was not necessary, and Vint failed to challenge the weight assigned to those opinions.  (*Id.*)  Second, the ALJ found Dr. Borys' opinion limiting Vint to sedentary work unpersuasive, and Vint failed to challenge the weight assigned to her opinion.  (*Id.* at 10-11.)  Third, Vint failed to identify "any evidence outside of her [sic] own, unsubstantiated allegations that describe the circumstances in which the cane would be needed, as is necessary to establish that a cane is medically necessary" under SSR 96-9p.  (*Id.* at 11.)  Fourth, the record does not document any continuous, 12-month period in which Vint needed to use a cane.  (*Id.*)

In his reply brief, for the first time, Vint argues that the ALJ further erred in finding "there was no documented prescription for a cane (Tr. 22)" when the record showed that a cane was prescribed for stability with ambulation.[6]  (Doc. No. 12 at 1.)

> SSR 96-9p states, in relevant part:
>
>> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.  For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9p, 1996 WL 374185 (S.S.A. July 2, 1996) (emphasis added).[7]

Interpreting this ruling, the Sixth Circuit has explained that where a cane "was not a necessary device for claimant's use, it cannot be considered an exertional limitation that reduced her ability to work." *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002).  The Sixth Circuit has not directly ruled on this issue but other courts in this district have noted that, in cases involving assistive devices including a cane, documentation "describing the circumstances for which [the assistive device] is needed" is critical to establishing that it qualifies as a "necessary device" under SSR 96-9p.  *McGill v. Comm'r of Soc. Sec. Admin.*, No. 5:18 CV 1636, 2019 WL 4346275, at *10 (N.D. Ohio Sept. 12, 2019), citing

---

[6] The Court will not address arguments raised for the first time in a reply brief. *See Bender v. Comm'r of Soc. Sec.*, 2012 WL 3913094, at *8 (N.D. Ohio Aug. 17, 2012). *See also Daniels v. Colvin*, 2015 WL 4394412, at *18 (N.D. Ohio July 16, 2015). Because Vint failed to challenge the ALJ's decision on this basis in his brief on the merits, the undersigned deems this argument waived and will not address it herein.

[7] As the Tenth Circuit noted, "SSR 96–9p is entitled 'Policy Interpretation Ruling Titles II and XVI: Determining Capability To Do Other Work—Implications of a Residual Functional Capacity *for Less Than a Full Range of Sedentary Work.*' (emphasis added)." *Staples v. Astrue*, 329 F. App'x 189, 191 n.1 (10th Cir. 2009).  Like the instant case, the ALJ fin *Staples* found that the claimant could do light work, not just sedentary work.  *Id.*  Again, as is the case here, the parties agreed that SSR 96-9p's standard for evaluation of a medically required hand-held assistive device applies to the claimant's use of a cane.  *Id.*

*Carreon v. Massanari*, 51 F. App'x at 575;  *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012) (noting that a finding of medical necessity of an assistive device requires a statement of the circumstances in which it is needed and that other circuits "have required an unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary"); *Spaulding v. Astrue*, 379 F. App'x 776, 780 (10th Cir. 2010) (prescription for a cane from the Veteran's Administration insufficient to show medical necessity); *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) (prescription and references that claimant used a cane insufficient to show medical necessity).

While a physical therapist provided Vint with a cane for "improved stability with ambulation" (Tr. 468), none of the records cited by Vint state that a cane is medically necessary, let alone set forth the circumstances in which it is necessary, as SSR 96-9p requires.  In similar situations, multiple courts throughout this Circuit upheld ALJ decisions that did not include the need for a cane in a claimant's RFC. *See, e.g., Golden v. Berryhill*, No. 1:18CV00636, 2018 WL 7079506, at *19 (N.D. Ohio Dec. 12, 2018) ("Moreover, as [the doctor's] confirmation of a cane prescription does not indicate 'the circumstances for which [the cane] is needed,' it does not fulfil the requirements under SSR 96-9p."); *Krieger v. Comm'r of Soc. Sec.*, No. 2:18-cv-876, 2019 WL 1146356, at *6 (S.D. Ohio March 13, 2019) (finding ALJ did not err in not including a limitation for a cane where physician indicated claimant would need a cane but did not describe the specific circumstances for which a cane is needed as required by SSR 96-9p); *Salem v. Colvin*, No. 14-CV-11616, 2015 WL 12732456, at *4 (E.D. Mich. Aug. 3, 2015) (finding the ALJ did not err in not including a limitation for a cane, when it had been prescribed, but neither the prescription or treatment records "indicate[d] the circumstances in which [the claimant] might require the use of a cane."); *Marko v. Comm'r of Soc. Sec.*, No. 2:16-cv-12204, 2017 WL 3116246, at *5 (E.D. Mich. July 21, 2017) (rejecting claimant's assertion that the ALJ failed to account for her use of a cane, stating that nothing in the physician's "mere prescription for a cane provides evidence to indicate the frequency with

23

which the cane should be used, its purpose, or its limit upon Plaintiff's ability to perform light work")
(citations omitted); *Halama v. Comm'r of Soc. Sec.*, Case No. 1:12 CV 1859, 2013 WL 4784966, at *8
(N.D. Ohio Sept. 5, 2013) ("Here, even Halama does not contend that the record contains the
"unambiguous" statement of a physician containing the circumstances under which it would be medically
necessary for him to use a cane. Inasmuch as there is no such statement in the record, I find that the
decision of the ALJ in this case not to incorporate the use of a cane into the RFC is supported by
substantial evidence."); *Strain v. Comm'r of Soc. Sec. Admin.*, Case No. 5:12-CV-1368, 2013 WL
3947160, at *3 (N.D. Ohio Aug. 1, 2013) ("Although Strain can demonstrate that she uses or has used a
cane, she does not provide evidence that she *required* use of the cane. She is unable to point to any clinical
evidence that *unmistakably* says that she *must* use a cane. At this point in the inquiry, with its deferential
standard of review, she must do so in order to upset the decision of the ALJ.") (emphasis added).

"The lack of showing required under SSR 96-9p is all the more pronounced given that the record is
inconsistent, at best, as to [Vint's] use of and need for a cane." *Stupka v. Saul*, Case No. 1:19-cv-2305,
2021 WL 508298, at *4 (N.D. Ohio Feb. 11, 2021).  By February 2021, various treatment providers noted
Vint was ambulating with a normal gait (Tr. 1294, 1305) and/or without a cane.  (*Id.* at 1217-18, 1304.)

In sum, while there may be evidence supporting Vint's use of a cane, substantial evidence also
supports the ALJ's RFC determination and its compliance with SSR 96-9p.  An ALJ decision cannot be
reversed merely because there exists some other evidence in the record that might support a different
conclusion.  *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 833 (6th Cir. 2006) ("The findings of
the Commissioner are not subject to reversal merely because there exists in the record substantial evidence
to support a different conclusion ... This is so because there is a 'zone of choice' within which the
Commissioner can act without the fear of court interference.") (citation omitted).

24

Accordingly, and for all the reasons set forth above, Vint's second assignment of error is without merit and does not provide a basis for remand.

## VII.    CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

Date: October 31, 2023                                        *s/ Jonathan Greenberg*
                                                                          Jonathan D. Greenberg
                                                                          United States Magistrate Judge


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**